HARLAND DEAN CAMPBELL, Plaintiff v. CITY OF HIGH POINT, Defendant

No. COA00-882

(Filed 3 July 2001)

## 1. Cities and Towns— negligence—contact with electrical wire—no notice to defendant of break in insulation

The trial court did not err by granting summary judgment for defendant city in a negligence action by a Cablevision installer who was injured in a fall after coming into contact with an electrical wire owned by defendant. Although plaintiff alleged that a tree branch had grown around the wire, breaking its insulation, plaintiff did not set forth facts establishing that defendant had actual or constructive notice of any break in the insulation of the wire.

## 2. Negligence— res ipsa loquitur—contact with electrical line while on ladder

The trial court did not err by granting summary judgment for defendant city in a negligence action by a Cablevision installer who was injured in a fall after coming into contact with an electrical wire owned by defendant where plaintiff contended that defendant was liable under res ipsa loquitur. Res ipsa loquitur does not apply because the evidence permits a reasonable inference that defendant's negligence, if any, was concurrent with that of plaintiff and his employer in that OSHA standards for working above ground and around electrical power conductors were not observed. Moreover, a person aware of a dangerous electrical wire has a duty to avoid coming into contact with it.

Judge HUNTER dissenting.

Appeal by plaintiff from judgment entered 4 April 2000 by Judge W. Douglas Albright in Guilford County Superior Court. Heard in the Court of Appeals 25 April 2001.

*Skager Law Firm, by Philip R. Skager, for plaintiff.*

*Womble Carlyle Sandridge & Rice PLLC, by Gusti W. Frankel and Alison R. Bost, for defendant.*

TYSON, Judge.

Harland Dean Campbell ("plaintiff") appeals the trial court's entry of summary judgment in favor of the City of High Point ("defendant"). We affirm the trial court's grant of summary judgment.

## Facts

Plaintiff was employed as an installer technician for Cablevision of High Point ("Cabelvision") on 16 October 1995. Plaintiff was working that day to disconnect cable television service at a residence at 1701 County Club Road in High Point, North Carolina. The residence was owned by private individuals, and was used for rental purposes. No one had occupied the residence since 2 October 1995. The owners did not disconnect the electrical power following the tenants' departure.

Plaintiff positioned a fiberglass ladder against a wire support strand attached to a telephone pole in order to disconnect cable service at the residence. Plaintiff then ascended the ladder and began to disconnect the service. As plaintiff began to disconnect the service, he felt an electrical current travel through his body. Plaintiff jumped off of the ladder to escape the current, and sustained leg and foot injuries in his fall to the ground.

Plaintiff testified that he inspected the area where he was about to work and did not see anything unusual prior to ascending the ladder. Plaintiff further testified that he did not see any broken or bare electrical wires prior to his attempt to disconnect the cable service. Plaintiff was not wearing a safety belt, insulated safety gloves, or a fall-arrest system at the time of his injury.

On 15 October 1998, plaintiff filed the present negligence action against defendant, and the individual owners of 1701 Country Club Road. Plaintiff subsequently filed a voluntary dismissal with prejudice as to the individual owners on 25 May 1999. Plaintiff proceeded against defendant, alleging that the electrical shock which caused his fall resulted from a broken or bare electrical wire owned, operated, and negligently maintained by defendant. Plaintiff alleged that a tree branch located on the property of the residence had grown around the electrical wires, causing the wires' insulation to break.

Defendant answered on 19 November 1998, denying any negligence, and alleging, in the alternative, the joint and concurrent negligence of Cablevision. Defendant presented evidence that city

employees trimmed the trees at 1701 Country Club Road less than two months prior to plaintiff's accident. Lloyd D. Shank, Jr. ("Shank"), Director of Electric Utilities for defendant, testified that defendant "regularly trims trees around electrical wires," and that defendant, through its contractor, "trimmed the trees in the Country Club Road area, including 1701 Country Club, on August 25 through 28, 1995." Shank further testified that plaintiff's accident "was the first notice to [defendant] of any problems with the electricity or the electrical wires at 1701 Country Club."

Defendant moved for summary judgment on 9 March 2000. Plaintiff filed a motion for partial summary judgment on 24 March 2000. The trial court granted defendant's motion on 4 April 2000. Plaintiff appeals.

---

[1] The sole issue on appeal is whether the trial court erred in granting summary judgment in favor of defendant. Plaintiff concedes that defendant initially insulated the wire which plaintiff alleges was defective. Plaintiff asserts that defendant breached a duty of care by "allowing the [tree] limb to grow around or otherwise damage the electrical wire." Plaintiff argues that he has presented evidence of each element of a negligence action sufficient to withstand defendant's motion for summary judgment, and to support the entry of summary judgment in plaintiff's favor. We disagree.

"It is well-established that our review of the grant of a motion for summary judgment requires the two-part analysis of whether, '(1) the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, show that there is no genuine issue as to any material fact, and (2) the moving party is entitled to judgment as a matter of law.' " *Price v. City of Winston-Salem*, 141 N.C. App. 55, 58, 539 S.E.2d 304, 306 (2000), *disc. review denied*, 353 N.C. 380, — S.E.2d — (2001) (quoting *Gaunt v. Pittaway*, 139 N.C. App. 778, 784, 534 S.E.2d 660, 664 (2000)). " '[S]ummary judgment may be granted in a negligence action where there are no genuine issues of material fact and the plaintiff fails to show one of the elements of negligence.' " *Willis v. City of New Bern*, 137 N.C. App. 762, 764, 529 S.E.2d 691, 692 (2000) (quoting *Lavelle v. Schultz*, 120 N.C. App. 857, 859, 463 S.E.2d 567, 569 (1995), *disc. review denied*, 342 N.C. 656, 467 S.E.2d 715 (1996)).

"Municipalities are responsible only for negligent breach of duty, which is made out by showing that (1) a defect existed, (2) an injury

was caused thereby, (3) the City officers knew, or should have known from ordinary supervision, the existence of the defect, and (4) that the character of the defect was such that injury. . . therefrom might reasonably be anticipated." *Desmond v. City of Charlotte*, 142 N.C. App. 590, 592-93, 544 S.E.2d 269, 271 (2001) (citing *McClellan v. City of Concord*, 16 N.C. App. 136, 191 S.E.2d 430 (1972)).

"[N]otice of the defect, actual or constructive, and a failure to act on the part of the municipality to remedy the situation are prerequisites to recovery in an action involving a municipality." *Bowman v. Town of Granite Falls*, 21 N.C. App. 333, 334-35, 204 S.E.2d 239, 240-41 (1974) (citing *Faw v. North Wilkesboro*, 253 N.C. 406, 117 S.E.2d 14 (1960)); *see also, Rice v. City of Lumberton*, 235 N.C. 227, 236, 69 S.E.2d 543, 549-50 (1952) (municipal corporation engaged in business of supplying electricity must exercise diligence to repair breaks in high tension wires where it has notice of a break, regardless of cause which produced break); *Ward v. City of Charlotte*, 48 N.C. App. 463, 467, 269 S.E.2d 663, 666, *disc. review denied*, 301 N.C. 531, 273 S.E.2d 463 (1980) ("a municipal corporation is not an insurer of the condition of its sewerage system, and liability may only arise where the municipality has actual or constructive notice of the existence of an obstruction or defect and fails to act.").

In *Willis*, this Court held that summary judgment in favor of the defendant city was proper where the plaintiff could not "offer proof of any factor which should have given the City constructive notice of a defect in its sidewalk." *Willis*, 137 N.C. App. at 765, 529 S.E.2d at 693. The Court noted that the plaintiff "did not notice any defect in the sidewalk herself until after she had fallen." *Id.* We stated that " '[t]he happening of an injury does not raise the presumption of negligence. There must be evidence of notice either actual or constructive . . . . The existence of a condition which causes injury is not negligence per se.' " *Id.* (quoting *Smith v. Hickory*, 252 N.C. 316, 318, 113 S.E.2d 557, 559 (1960)).

In *Gower v. City of Raleigh*, 270 N.C. 149, 153 S.E.2d 857 (1967), our Supreme Court held that the plaintiff could not forecast sufficient evidence that the defendant city had actual or constructive knowledge of a defect in the street on which the plaintiff injured herself. *Id.* at 151, 153 S.E.2d at 859. The plaintiff testified that she looked down before stepping off the curb and did not observe any defect. *Id.* The Supreme Court held that the defect would not be more visible to a city inspector than to plaintiff, and that reasonable inspection of the street would not have led to discovery of the defect. *Id.* The Supreme

Court stated: "[i]f the city should have known the crack was a hazard to pedestrians, the plaintiff was negligent in stepping upon it, and thereby contributed to her own injury." *Id.* at 151-52, 153 S.E.2d at 859.

In this case, plaintiff has failed to offer proof of any factor establishing defendant's actual or constructive notice of the defect in the insulation. The evidence shows that defendant regularly trims trees surrounding electrical wires. Defendant trimmed the trees on Country Club Road, including trees on the property of 1701 Country Club Road, from 25-28 August 1995, less than two months before plaintiff's accident. Shank testified that defendant never received any complaints or notice of any problem with the electricity or electrical wires located at 1701 Country Club Road prior to plaintiff's accident. Plaintiff did not forecast any evidence that defendant was ever notified of any problem with the wires. *See Desmond*, 142 N.C. App. at 593, 544 S.E.2d at 271-72 (plaintiff presented no evidence that city received actual or constructive notice of defect in sidewalk prior to plaintiff's injury where there were "no records of complaints regarding this sidewalk since 1994, when the municipality began maintaining such records.").

Plaintiff testified in his deposition that he did "a visual inspection" around the wires prior to attempting to disconnect the cable service. He testified that he did not "notice anything unusual about any tree limbs before [he] went up on the ladder," and that he did not "notice anything unusual about any electrical wires before [he] went up on the ladder." Plaintiff also testified that there were "leaves all over the tree," such that he did not notice any bare or broken insulation or wires. Plaintiff did not present evidence to show that a reasonable inspection of the area would have led to discovery of the broken insulation. Nor did plaintiff present any evidence as to when the insulation broke or otherwise became bare. *See Ward*, 48 N.C. App. at 469, 269 S.E.2d at 667 (directed verdict in favor of defendant city proper even if city failed to inspect or clean sewer lines where there was no evidence to show that defect causing backflow "had been present for a sufficient period of time so as to place the City on constructive notice of the defects or to show that an inspection would have disclosed their presence.").

Plaintiff testified that he had no "evidence that [defendant] had any notice that there was a problem with that wire and that tree limb at any time before [his] accident." Plaintiff testified that he did not have any evidence "to support the allegations that the electrical

transmission wire had been allowed by the defendants to grow into a tree branch." Plaintiff testified that he did not have any evidence "that the defendants knew or should have known that the electrical wire had become entrapped and/or stretched in the tree limbs." He testified that he had no evidence that defendant "knew or should have known that the wire can break or become bare."

Plaintiff further testified that the only evidence he had that defendants failed to inspect the wires was simply "the very fact that [he] had this accident." This evidence is insufficient to withstand a properly supported motion for summary judgment. *See Willis, supra* ("[t]he happening of an injury does not raise the presumption of negligence."). "When a motion for summary judgment is made and supported as provided in this rule, an adverse party may not rest upon the mere allegations or denials of his pleading, but his response, by affidavits or as otherwise provided in this rule, <u>must set forth specific facts</u> showing that there is a genuine issue for trial. If he does not so respond, summary judgment, if appropriate, shall be entered against him." N.C. Gen. Stat. § 1A-1, Rule 56(e) (emphasis supplied); *see also Roumillat v. Simplistic Enterprises, Inc.*, 331 N.C. 57, 64, 414 S.E.2d 339, 342 (1992) (once defendant shows plaintiff's inability to prove the notice element of negligence, burden shifts to plaintiff for a contrary showing); *Willis* at 765-66, 529 S.E.2d at 693 (quoting *Atkins v. Beasley*, 53 N.C. App. 33, 38, 279 S.E.2d 866, 870 (1981)) (non-movant " 'must set forth specific facts' " establishing genuine issue for trial; non-movant may not rely on " 'mere allegations or denials of his pleadings.' ").

Plaintiff has not set forth specific facts establishing that defendant had actual or constructive notice of any break in the wires' insulation. Plaintiff has therefore failed to forecast sufficient evidence of each element of his claim of negligence against defendant. The trial court did not err in granting summary judgment in favor of defendant. *See Nicholson v. County of Onslow*, 116 N.C. App. 439, 441, 448 S.E.2d 140, 141 (1994) ("While we have recognized that summary judgment is a drastic remedy, a defendant can prevail on a motion for summary judgment by showing that the plaintiff will not be able to prove an essential element of her claim.").

[2] We also find no merit in plaintiff's assertion that defendant is liable under the doctrine of *res ipsa loquiter*. "*Res ipsa* applies when direct proof of the cause of an injury is not available, the instrumentality involved in the accident is under the defendant's control, and the injury is of a type that does not ordinarily occur in the absence of

some negligent act or omission." *Russell v. Sam Solomon Co.*, 49 N.C. App. 126, 130-31, 274 S.E.2d 518, 520 (1980), *disc. review denied*, 301 N.C. 722, 271 S.E.2d 231 (1981) (citing *Snow v. Power Co.*, 297 N.C. 591, 256 S.E.2d 227 (1979)).

However, the doctrine " 'does not apply where the evidence discloses that the injury might have occurred by reason of the concurrent negligence of two or more persons, or that the accident might have happened as a result of one or more causes, or where the facts will permit an inference that it was due to a cause other than defendant's negligence as reasonably as that it was due to the negligence of the defendant, or where the supervening cause is disclosed as a positive fact.' " *O'Quinn v. Southard*, 269 N.C. 385, 390, 152 S.E.2d 538, 542 (1967) (quoting *Etheridge v. Etheridge*, 222 N.C. 616, 619, 24 S.E.2d 477, 480 (1943)); *see also Ward*, 48 N.C. App. at 468, 269 S.E.2d at 666-67 (*res ipsa loquitur* inapplicable where the evidence "does not exclude all inferences other than the inference that the defendant was negligent as plaintiffs alleged.").

The evidence in this case permits a reasonable inference that defendant's negligence, if any, was concurrent with that of plaintiff and/or his employer, Cablevision. The federal Occupational Safety and Health Administration ("OSHA") standards governing telecommunications labor require that "[s]afety belts and straps shall be provided and the employer shall ensure their use when work is performed at positions more than 4 feet above ground, on poles, and on towers." 29 C.F.R. § 1910.268(g).

Plaintiff testified that he was working approximately 18 feet above ground while on the ladder. Plaintiff concedes in his brief that he failed to comply with 29 C.F.R. § 1910.268(g), requiring use of a safety belt. We are unpersuaded by plaintiff's argument that the failure to do so was not negligent because the absence of the safety device was not the proximate cause of his injuries. While plaintiff correctly observes that the safety belt would not have prevented an electric shock, the belt would have prevented plaintiff's fall all the way to the ground, the impact of which caused the injuries of which he now complains.

Subsection (m) of the OHSA standards states that "[e]lectric power conductors and equipment shall be considered as energized unless the employee can visually determine that they are bonded to [suitable protective grounding]." 29 C.F.R. § 1910.268(m). Plaintiff testified that he did not check the lines for voltage prior to beginning

work on the lines. Duane Church, an installation supervisor for Cablevision, testified that although such an inspection was "possibly" standard procedure, Cablevision did not provide plaintiff with the equipment necessary to check for voltage.

Moreover, "[i]t is well settled that when a person is aware of an electrical wire and knows that it is or may be highly dangerous, he has a duty to avoid coming in contact with it." *Williams v. Carolina Power & Light Co.*, 296 N.C. 400, 404, 250 S.E.2d 255, 258 (1979). The evidence does not so clearly establish that any negligence which caused plaintiff's injury was solely that of defendant. Thus, *res ipsa loquitur* does not apply. The trial court properly entered summary judgment in favor of defendant.

Affirmed.

Judge WALKER concurs.

Judge HUNTER dissents.

HUNTER, Judge, dissenting.

The majority opinion held that summary judgment was appropriately granted in defendant's favor. However, as I believe a genuine issue of material fact exists, I respectfully dissent.

"Summary judgment is recognized as a drastic remedy, and, particularly in cases involving the question of negligence or reasonable care, that remedy is an appropriate procedure only under exceptional circumstances." *Brown v. Power Co.*, 45 N.C. App. 384, 386, 263 S.E.2d 366, 368 (1980).

"Electricity is an inherently dangerous substance." *Snow v. Power Co.*, 297 N.C. 591, 596, 256 S.E.2d 227, 231 (1979). We note that a City engaged in the proprietary activity of furnishing electricity is liable for injury due to its negligence upon the same principles applicable to privately-owned power companies. *See Dale v. Morganton*, 270 N.C. 567, 573, 155 S.E.2d 136, 142 (1967).

"A supplier of electricity owes the highest degree of care to the public because of the dangerous nature of electricity." *Sweat v. Brunswick Electric Membership Corp.*, 133 N.C. App. 63, 65, 514 S.E.2d 526, 528 (1999). As such, electric companies are required to use reasonable care in the construction, *maintenance, and inspec-*

*tion* of their lines and apparatus where they are likely to come in contact with the public. *See Helms v. Power Co.*, 192 N.C. 784, 786, 136 S.E. 9, 10 (1926) (power company's negligence in maintaining wires coming in contact with telephone wires injuring lineman held for jury); *see also Benton v. Public-Service Corporation*, 165 N.C. 354, 81 S.E. 448, 449 (1914) (where intestate, a boy of 12, climbed a tree in a city street, and, coming in contact with one of defendant's high-tension electric wires passing through the tree at a place where the insulation had been worn off, received injuries from which he died, defendant was guilty of actionable negligence); and *Sweat*, 133 N.C. App. 63, 65, 514 S.E.2d 526, 528.

In fact:

> The degree of care which will satisfy this requirement varies, of course, with the circumstances, but it must always be commensurate with the dangers involved, and where the wires maintained by a company are designed to carry a strong and powerful current of electricity, the law imposes upon the company the duty of exercising the utmost care and prudence consistent with the practical operation of its business, to avoid injury to those likely to come in contact with its wires.

*Helms*, 192 N.C. 784, 786, 136 S.E. 9, 10. Additionally, " '[a] company maintaining electric lines over which a current of high voltage is carried is bound to exercise the necessary care and prudence to prevent injury at places where others have the right to go either for *work, business* or pleasure.' " *Ellis v. Power Co.*, 193 N.C. 357, 360, 137 S.E. 163, 165 (1927) (emphasis in original and emphasis omitted) (quoting *Love v. Power Co.*, 86 W. Va. 393, 397, 103 S.E. 352, 353 (1920)).

In its opinion, the majority states that "[p]laintiff has not set forth specific facts establishing that defendant had actual or constructive notice of any break in the wires' insulation." However, regarding notice, our Supreme Court has stated:

> "The owner or operator of an electric plant is bound to exercise a reasonable degree of care in erecting pole lines, selecting appliances, insulating the wire wherever people have a right to go and are liable to come in contact with them, and *in maintaining a system of inspection by which any change which has occurred in the physical conditions surrounding the plant, poles, or lines of wire, which would tend to create or increase the danger to persons lawfully in pursuit of their business or*

> *pleasure, may be reasonably discovered. It would hardly do to say that the defendant can only be required to exercise due diligence after it received notice of any defect in its appliances or of any change in the physical conditions surrounding them, for this would be placing a premium upon negligent ignorance."*

*Ellis*, 193 N.C. at 360, 137 S.E. at 165 (emphasis omitted, emphasis in original and emphasis added) (quoting *Bourke v. Butte Elec. & Power Co.*, 33 Mont. 267, 83 P. 470, 474 (1905)). Moreover:

> "It is also the duty of such company to make reasonable and proper inspection of its appliances. This duty does not contemplate such inspection as would absolutely forestall injuries. Whether in a given case the duty to inspect, as reasonable care, prudence and foresight would suggest, has been performed is a question for the jury to determine under all the facts and circumstances of the event."

*Ellis*, 193 N.C. at 361, 137 S.E. at 165 (quoting *Alabama City G. & A. Ry. Co. v. Appleton*, 171 Ala. 324, 330, 54 So. 638, 640, Am. Ann. Cas. 1913A, 1181 (1911)).

In his complaint, plaintiff asserts, *inter alia*, that the City of High Point was negligent in "[f]ailing to inspect its electrical transmission wire leading to the residence . . . ," "[f]ailing to trim tree branch or branches that had grown around said wire . . . ," and "[f]ailing to maintain its electrical wire in an area close to a house and close to cable television wires . . . ." Plaintiff presented evidence which tended to show that a tree branch, located on the property at 1701 Country Club Road in High Point, North Carolina, had grown onto the electrical lines leading from the street to the house and caused the electrical wire to lose its insulation or otherwise break. This break in the electrical wire caused a feedback of approximately 100 volts onto the cable television lines on which plaintiff was working.

Additionally, plaintiff contends that he was at least forty inches away from any electrical line while working, and at no time did he come into contact with any of the electrical lines. Furthermore, the Director of Electric Utilities for the City of High Point stated that the City, "regularly trims trees around electrical wires in order to prevent the trees from coming in contact with the wires"; and a report was proffered showing that the City had inspected and trimmed the trees on Country Club Road approximately two months prior to plaintiff's accident. Regarding the tree limb that caused the electrical line to

BRIDGESTONE/FIRESTONE, INC. v. OGDEN PLANT MAINT. CO. OF N.C.

[144 N.C. App. 503 (2001)]

lose its insulation or break, plaintiff stated in his deposition that the City must have missed it while trimming.

Moreover, Duane Church, an installation supervisor for Cablevision in High Point, arrived at the scene shortly after plaintiff's accident. In his deposition, Mr. Church stated, "I saw what looked to be about a three inch to four inch limb with roughly an inch to two inches of the limb actually grown around the power drop." "[I]t was actually . . . encased in, in the limb itself." In fact, the City does not dispute any pertinent facts of plaintiff's accident, however, the City does assert that plaintiff failed to show that the City had any notice whatsoever of the break in the wires' insulation.

In sum, I am of the opinion that the City of High Point should have been aware that a cable repairman might likely come into contact with its electrical lines. Based on plaintiff's evidence that he did not touch the electrical lines, he was at least forty inches away from the electrical lines, the tree limb was growing through the electrical line, and the observation that the City must have missed this particular limb when trimming, a genuine issue of material fact exists. In light of our Courts' treatment of electricity and "the highest degree of care" owed to the public because of the dangerousness of its nature, whether the duty to inspect and maintain had been performed is a question for the jury to determine under all the facts and circumstances of this case. Thus, summary judgment was inappropriately granted here.