CALABRIA, Judge.
 

 *319
 
 Sherman L. Steele ("plaintiff") appeals from an order granting summary judgment in favor of the City of Durham ("the City"). This negligence case presents the issue of whether the City or the State owed a legal duty to maintain a reasonably safe sidewalk located within the City limits beside a State Municipal System Highway. We conclude that because there was no contract delegating maintenance of the sidewalk, the City, not the State, had a statutory duty to maintain the sidewalk in a reasonably safe manner. In addition, plaintiff's forecast of evidence
 
 *320
 
 presents genuine issues of material fact as to the City's negligence and plaintiff's contributory negligence, precluding summary judgment. Therefore, we reverse and remand.
 

 I. Background
 

 Around midnight on 7 August 2011, plaintiff was walking in the City along the eastern sidewalk of South Alston Avenue, also known as North Carolina State Highway 55 ("Highway 55"), when he stepped into a hole in the sidewalk and fell. Plaintiff sustained injuries to his shoulder, which required arthroscopic surgery. According to plaintiff's evidence, the hole was not visible due to overgrown vegetation. On 10 July 2013, plaintiff filed an action against the City,
 
 [1]
 
 alleging negligence in failing to inspect, maintain, and repair the sidewalk. The City filed its answer, defenses, and affirmative defenses. On 2 May 2014, the City filed a motion for summary judgment.
 

 During the summary judgment hearing on 14 July 2014, the City presented evidence that the pertinent stretch of Alston Avenue was a State right-of-way because it runs beside Highway 55, which is part of the State Highway System, as defined by 19A N.C.A.C. 2D.0404(2). Plaintiff presented affidavits from five residents who live near the pertinent area of Alston Avenue; in summary, the residents indicated that City employees had generally maintained the area by trimming back vegetation and placing a cone in the hole in the sidewalk. Plaintiff also presented the deposition of Dwight Murphy, the Operations Manager for the City's Public Works Department. Murphy stated that he was notified of plaintiff's injury and investigated the hole, which he discovered appeared to be caused by a utility vault in the sidewalk. Murphy noted there was a cone in the hole but stated it did not belong to the City. Murphy was not aware of which entity-the City or the NCDOT-was responsible for maintaining the subject sidewalk. Murphy formerly worked for the City of Greensboro, where the State maintained certain sidewalks adjacent to state-owned highways. However, after learning of plaintiff's injury, Murphy stated that he discovered "[i]n Durham, the State does not maintain any sidewalks." Plaintiff also pointed to 19A N.C.A.C. 2D.0404(c)(6), promulgated by the NCDOT, which provides that the State's maintenance duty does not extend to sidewalks.
 

 *321
 
 In summary, it is undisputed that plaintiff fell and sustained injuries on a portion of the sidewalk which runs along Highway 55, also known as Alston Avenue, which is a "State Municipal System Highway," as defined by 19A N.C.A.C. 2D.0404(a)(3). On 13 August 2014, the trial court considered the evidence and both parties' arguments and granted summary judgment in favor of the City. Plaintiff appeals.
 

 *334
 

 II. Negligence
 

 Plaintiff contends the trial court erred by granting summary judgment in favor of the City. Specifically, plaintiff contends that the forecast of evidence, viewed in the light most favorable to plaintiff, shows that (1) the City had a legal duty to maintain the sidewalk, (2) genuine issues of material fact exist as to whether the City provided a reasonably safe sidewalk, and (3) plaintiff was not contributorily negligent. We agree.
 

 A. Legal Duty
 

 Turning first to whether the City owed plaintiff a legal duty, "[w]hen there is no dispute as to the facts ... the issue of whether a duty exists is a question of law for the court."
 
 Mozingo by Thomas v. Pitt Cty. Mem'l Hosp., Inc.,
 

 101 N.C.App. 578
 
 , 588,
 
 400 S.E.2d 747
 
 , 753 (1991) (citations omitted),
 
 aff'd,
 

 331 N.C. 182
 
 ,
 
 415 S.E.2d 341
 
 (1992). Absent a legal duty, there can be no negligence.
 
 Turner v. North Carolina Dept. of Transp.,
 

 223 N.C.App. 90
 
 , 93,
 
 733 S.E.2d 871
 
 , 874 (2012) (citation omitted). This duty may arise by statute or operation of law.
 
 Pinnix v. Toomey,
 

 242 N.C. 358
 
 , 362,
 
 87 S.E.2d 893
 
 , 897 (1955) (citation omitted). Plaintiff contends the City owed him a statutory duty to keep the sidewalk reasonably safe. We agree.
 

 The City acknowledges its statutory authorization to maintain sidewalks within its corporate boundaries under N.C. Gen.Stat. § 160A-296, which imposes upon municipalities "[t]he duty to keep the public streets,
 
 sidewalks,
 
 alleys, and bridges [within its corporate limits] in proper repair" and "[t]he duty to keep the public streets,
 
 sidewalks,
 
 alleys, and bridges [within its corporate limits] ... free from unnecessary obstructions[.]" N.C. Gen.Stat. § 160A-296 (a)(1)-(2) (2015) (emphasis added). The statute vests municipalities with authority and control of all public passages, except certain streets and bridges, located within its municipal boundaries:
 

 (a) A city shall have general authority and control over all public streets,
 
 sidewalks,
 
 alleys, bridges, and other ways of public passage within its corporate limits except to the
 
 *322
 
 extent that authority and control over certain streets and bridges is vested in the Board of Transportation [NCDOT].
 

 N.C. Gen.Stat. § 160A-296(a) (2015) (emphasis added). Furthermore, we take judicial notice, pursuant to N.C. Gen.Stat. § 150B-21.22 (2015), of the following relevant provision of the North Carolina Administrative Code relating to the maintenance of the state highway system within a municipality: "The maintenance of sidewalks is a municipal responsibility." 19A N.C.A.C. 2D.0404(c)(6).
 

 The City asserts that while it has a general duty regarding sidewalks, this particular sidewalk does not fall within the purview of the statute, but rather within an exception provided for in N.C. Gen.Stat. § 160A-297, because Highway 55 is a "state-maintained road." The City argues:
 

 Appellant would have the Court completely ignore the fact that the sidewalk in question is in the right-of-way of [Highway 55], which is a state-maintained road. While it is true that [N.C. Gen.Stat. § ] 160A-296 creates a statutory duty to maintain "streets, sidewalks, alleys and bridges," that duty is limited to municipal "streets, sidewalks, alleys and bridges" and does not extend to those that made [sic] a part of the State Highway System.
 

 In other words, the City contends that under N.C. Gen.Stat. § 160A-297, it is responsible only for sidewalks within its municipal borders that do not run along "state-maintained roads." It is true that N.C. Gen.Stat. § 160A-297 limits a city's responsibility to maintain certain
 
 streets
 
 and
 
 bridges:
 

 (a) A city shall not be responsible for maintaining streets or bridges under the authority and control of the [NCDOT], and shall not be liable for injuries to persons or property resulting from any failure to do so.
 

 N.C. Gen.Stat. § 160A-297 (2015). But the statute does not limit a city's responsibility to maintain
 
 sidewalks.
 

 The City's arguments overlook the fact that the applicable statutes and regulations governing maintenance of roadways define all of the different
 
 components
 
 of the roadway itself separately-such as pavements, storm drainage or storm sewers, open drainage,
 
 *335
 
 shoulders, and sidewalks.
 
 See
 
 19A N.C.A.C. 2D.0404(a) (defining roadways and components). The cases cited by the City address streets or bridges-not
 
 *323
 
 sidewalks-and thus are inapplicable to the instant case. Although the terms "street" or "highway" are often used generally in these statutes and regulations to refer to roadways used by motor vehicles, the statutes and regulations also set forth distinctly whether the State or municipality is responsible to maintain the various
 
 components
 
 of the roadways. This distinction depends upon whether the roadway is within the "State Highway System as described in [N.C. Gen.Stat. § ] 136-44.1," a "State Municipal Street System or Highway," a "Non-State System Municipal Street or Highway," or a "Rural Highway or Street."
 
 See
 
 19A N.C.A.C. 2D.0404(a)(2)-(5). The area in question is a "sidewalk," as defined by 19A N.C.A.C. 2D.0404(a)(13), which runs parallel to Highway 55, a "State Municipal ... Highway," as defined by 19A N.C.A.C. 2D.0404(a)(3) ; according to 19A N.C.A.C. 2D.0404(c)(6), "[t]he maintenance of sidewalks is a municipal responsibility."
 

 In its attempt to demonstrate that NCDOT is solely responsible to maintain this particular sidewalk, the City offered the plans and municipal agreement between the State Highway Commission and the City, entered in 1970, for the widening and improvement of "Alston Avenue from Price Street north to the Expressway." But this agreement addresses only the construction and financing of the project; it does not allocate responsibility for maintenance of the road or sidewalk after construction. In addition, the City offered the affidavit of H. Wesley Parham, P.E., who has "worked for the City of Durham since 1986" and was "employed as Assistant Transportation Director for the [NCDOT]." Parham's affidavit states that the plans for the 1970 project included the area where plaintiff fell and that he is not aware of any "re-engineering or construction improvements" at the location since the 1970 project was completed. Parham also stated that he is unaware of any "agreement that applies to the City of Durham which would require the City to assume street and/or sidewalk maintenance and improvement responsibility" for the relevant area of sidewalk.
 

 Essentially, the City argues that it would be responsible to maintain the sidewalk
 
 only
 
 if it had entered into an agreement with the NCDOT to provide maintenance, and it has not done so. But the City is responsible to maintain the sidewalk
 
 unless
 
 it has entered into a maintenance agreement that says otherwise.
 
 See
 
 N.C. Gen.Stat. § 160A-296 (a)(1)-(2) ;
 
 see also
 
 19A N.C.A.C. 2D.0404(c)(6). The City's responsibility to maintain the sidewalk was created by N.C. Gen.Stat. § 160A-296 and by 19A N.C.A.C. 2D.0404, and the City has not forecast any evidence that the NCDOT has
 
 *324
 
 agreed to take on maintenance responsibility for this sidewalk.
 
 [2]
 
 All of the evidence forecast by both the City and plaintiff shows that the City was responsible to maintain this particular sidewalk. Therefore, the trial court could not properly grant summary judgment for the City based upon the absence of a legal duty to maintain the sidewalk, and we must consider the remaining issues.
 

 B. Genuine Issues of Material Fact
 

 Plaintiff contends the trial court erred by granting the City's motion for summary judgment because there were genuine issues of material fact regarding whether the City maintained the sidewalk in a reasonably safe manner. We agree.
 

 "Our standard of review of an appeal from summary judgment is de novo; such judgment is appropriate only when the record shows that 'there is no genuine issue as to any material fact and that any party is
 
 *336
 
 entitled to a judgment as a matter of law.' "
 
 In re Will of Jones,
 

 362 N.C. 569
 
 , 573,
 
 669 S.E.2d 572
 
 , 576 (2008) (citation omitted). "When considering a motion for summary judgment, the trial judge must view the presented evidence in a light most favorable to the nonmoving party."
 
 Dalton v. Camp,
 

 353 N.C. 647
 
 , 651,
 
 548 S.E.2d 704
 
 , 707 (2001) (citation omitted). "Negligence claims are rarely susceptible of summary adjudication, and should ordinarily be resolved by trial of the issues."
 
 Lamb v. Wedgewood South Corp.,
 

 308 N.C. 419
 
 , 425,
 
 302 S.E.2d 868
 
 , 871 (1983) (citation omitted).
 

 The city is not liable for an injury sustained by such a fall unless a reasonable person, observing the defect prior to the accident, would have concluded that it was of such a nature and extent that, if it were allowed to continue, an injury to some person using the sidewalk in a proper manner could reasonably be anticipated.
 

 Waters v. City of Roanoke Rapids,
 

 270 N.C. 43
 
 , 48,
 
 153 S.E.2d 783
 
 , 787 (1967) (citations omitted). "[T]he duty of a municipality to keep its
 
 *325
 
 streets and sidewalks in a reasonably safe condition implies the duty of reasonable inspection from time to time."
 
 Rogers v. City of Asheville,
 

 14 N.C.App. 514
 
 , 517,
 
 188 S.E.2d 656
 
 , 658 (1972) (citation omitted). "The happening of an injury does not raise the presumption of negligence. There must be evidence of notice either actual or constructive."
 
 Willis v. City of New Bern,
 

 137 N.C.App. 762
 
 , 765,
 
 529 S.E.2d 691
 
 , 693 (2000) (quotation marks and citation omitted).
 

 "Constructive [notice] of a dangerous condition can be established in two ways: the plaintiff can present direct evidence of the duration of the dangerous condition, or the plaintiff can present circumstantial evidence from which the fact finder could infer that the dangerous condition existed for some time."
 
 Price v. City of Winston-Salem,
 

 141 N.C.App. 55
 
 , 63,
 
 539 S.E.2d 304
 
 , 309 (2000) (citation omitted). "When observable defects in a highway [or sidewalk] have existed for a time so long that they ought to have been observed, notice of them is implied, and is imputed to those whose duty it is to repair them."
 
 Desmond v. City of Charlotte,
 

 142 N.C.App. 590
 
 , 596,
 
 544 S.E.2d 269
 
 , 273 (2001) (citing
 
 Fitzgerald v. Concord,
 

 140 N.C. 110
 
 , 113,
 
 52 S.E. 309
 
 , 310 (1905) (citation omitted)). Sidewalks must be reasonably safe during the day and at night under such light as the municipality provides.
 
 Waters,
 

 270 N.C. at 47
 
 ,
 
 153 S.E.2d at 787
 
 (citation omitted).
 

 To assert an actionable claim of negligent sidewalk maintenance against a city, a pedestrian must present evidence that:
 

 (1) [the plaintiff] fell and sustained injuries; (2) the proximate cause of the fall was a defect in or condition upon the sidewalk; (3) the defect was of such a nature and extent that a reasonable person, knowing of its existence, should have foreseen that if it continued some person using the sidewalk in a proper manner would be likely to be injured by reason of such condition; (4) the city had actual or constructive notice of the existence of the condition for a sufficient time prior to the plaintiff's fall to remedy the defect or guard against injury therefrom.
 

 Cook v. Burke County,
 

 272 N.C. 94
 
 , 97,
 
 157 S.E.2d 611
 
 , 613 (1967) (quotation marks and citation omitted).
 

 In the instant case, plaintiff's affidavit establishes sufficient evidence of the first and second elements. Plaintiff's forecast of evidence suggests that plaintiff was walking along the sidewalk at night and a defect on the surface of the sidewalk caused plaintiff to sustain injuries. Plaintiff
 
 *326
 
 also presented affidavits from five residents of Alston Avenue indicating the hole existed in the sidewalk for at least five years and that employees of the City occasionally trimmed the vegetation growing from the sidewalk and the hole. Furthermore, although Murphy testified that he was unaware that an orange cone, which signals "caution," was placed inside a portion of the hole, there is evidence from an Alston Avenue resident that employees of the City replaced the cone after cutting the grass near the hole. Plaintiff's evidence also indicates that although the City maintained the vegetation around the hole, at the time of the incident, this hole had not been trimmed and the overgrown vegetation may have obstructed plaintiff's view of the hole and orange cone.
 
 *337
 
 From the forecast of evidence, we conclude a reasonable juror might find that the City had constructive notice of the defect, that it was foreseeable that the failure to remedy the defect might cause injury to a pedestrian, and that the City failed to reasonably maintain this particular section of the sidewalk. In fact, Murphy, a City employee, testified by deposition that he was not aware that the City was responsible for this section of the sidewalk. Additionally, the forecast of evidence might also support a finding that a defect of this magnitude, in addition to the orange warning cone, should have alerted plaintiff to the danger of the sidewalk and his own negligence would bar recovery against the City. In any event, there is conflicting evidence regarding whether the City breached the standard of care in its maintenance of the sidewalk that must be resolved by a jury. Since we are not satisfied that the affidavits presented at the summary judgment hearing support the trial court's conclusion that there were no genuine issues as to any material fact regarding the City's maintenance of the sidewalk, we conclude the trial court erred by granting the City's motion for summary judgment.
 

 C. Governmental Immunity
 

 We have considered the City's argument that it was immune from liability under the doctrine of governmental immunity and overrule its contention because sidewalks are specifically excluded from such immunity.
 
 See, e.g.,
 

 Sisk v. City of Greensboro,
 

 183 N.C.App. 657
 
 , 659,
 
 645 S.E.2d 176
 
 , 179 ("If the activity complained of is governmental, the municipality is entitled to governmental immunity. Maintenance of a public road and highway is generally considered a governmental function; however, exception is made in respect to streets and sidewalks of a municipality.") (citation omitted),
 
 disc. review denied,
 

 361 N.C. 569
 
 ,
 
 650 S.E.2d 813
 
 (2007).
 

 *327
 

 III. Conclusion
 

 According to the applicable North Carolina General Statutes and regulations, absent an agreement to the contrary, the City was responsible to maintain this sidewalk which runs parallel to Highway 55 within its municipal borders. After determining that the City owed plaintiff a statutory duty of care, we reviewed the record evidence and conclude genuine issues of material fact were presented as to whether the City had actual or constructive notice of the defective condition of this sidewalk. These issues of fact are directly relevant to whether the City was negligent. Therefore, the trial court's order granting summary judgment for the City must be reversed, and this case must be remanded for further proceedings.
 

 Reversed and remanded.
 

 Judges STROUD and INMAN concur.
 

 [1]
 

 Plaintiff has also filed an action with the North Carolina Industrial Commission against the North Carolina Department of Transportation ("NCDOT"), which has been stayed pending the resolution of this appeal.
 

 [2]
 

 For projects completed since July of 1978, there would normally be a pedestrian facilities maintenance agreement setting out maintenance responsibilities for a sidewalk, based upon 19A N.C.A.C. 2D.0406 : "The Department shall execute a pedestrian facilities maintenance agreement specifying responsibility for long term maintenance with the lead government entity or other local sponsor prior to construction for a proposed sidewalk." 19A N.C.A.C. 2D.0406(e). When the sidewalk along Alston Avenue was constructed in 1970, this provision was not in effect, and under the forecast of evidence for purposes of summary judgment, there was no "pedestrian facilities maintenance agreement" for this project.